## Mordaunt's Petition

*E. H. Beshlin,* and *Bordwell & Eldred,* for petitioners.
*M. A. Carringer, A. C. Brown* and *Earl Compton,* for respondents.

ARIRD, P. J., October 17, 1936.—On September 22, 1936, a petition was presented directed to the judges of this court. The petition in part reads as follows:

"The petition of Alexander Mordaunt, James Decker, Raymond L. Gardner, Edward C. Foster, Lawrence Moclair and Paul Abbott, respectfully represents:

"1. That they are severally qualified electors of the Lynch voting precinct of Howe Township, Forest County, Pa.

"2. That Louella Hoovler is the duly elected and qualified assessor of said election district.

"3. That, in compliance with the provisions of the acts of assembly of the Commonwealth of Pennsylvania in such case made and provided, the said Louella Hoovler, the assessor of said election district, was present at the election house therein on the day provided by law, to wit, September 2, 1936, and your petitioners severally ap-

peared in person at said election house on said day and made application to said assessor to have their names placed upon the registry list of voters of said election district, but the said assessor, in violation of the duty imposed upon her, refused to add their names to said list.

"Wherefore, your petitioners pray that the said Louella Hoovler, the assessor of said election district, and your petitioners as complainants, be called before your honorable court, or a law judge thereof, by citation or rule to show cause, to hear and dispose of the subject matter in a summary manner, in accordance with the provisions of the act of assembly in such case made and provided.

"And they will ever pray."

The petition was signed by Alexander Mordaunt, James Decker, Raymond L. Gardner, Edward C. Foster, Lawrence Moclair, and Paul Abbott.

The above-named petitioners made affidavit before a justice of the peace of Forest County.

The president judge made the following order:

"And now, to wit, September 22, 1936, on hearing the within petition and on due consideration thereof, rule to show cause is granted returnable Friday, October 9, 1936, at 10 a.m. Copy of petition and rule to show cause to be served upon said Louella Hoovler, the assessor named therein, at least 10 days before return day of said rule, and answer to be filed at least five days before the date of the hearing thereon.

"D. U. Arird, P. J."

Pursuant to the foregoing order on October 9, 1936, a hearing was had in open court at Tionesta, Pa. Evidence was presented on the part of the petitioners. It appears that Mrs. Louella Hoovler had been elected and duly qualified as Assessor of Howe Township, Forest County, Pa., and was acting assessor for the year 1936.

The following is a copy of the "Certificate of Enrollment" offered to the assessor:

"9-1935

"CERTIFICATE OF ENROLLMENT

"Date, Sept. 1, 1936

"I, Edward C. Foster, a duly qualified voter residing in Howe Township Election District, hereby declare that I desire to be enrolled as a member of the Democratic party and express my desire to vote the ticket of said party at the Primary Election next ensuing, and request that my name be enrolled on the Assessor's list as a member of said party for the purpose of participating in said Primary or Primaries.

"Signature of Elector, Edward C. Foster.

"Witness: S. M. Kifer.

"Address, Blue Jay Camp.

"(For Instructions, See Other Side)

"Note address, 'Blue Jay Camp.'"

The evidence shows that 110 men, hauled in trucks, came before the assessor on the last day to register, September 2, 1936, for the purpose of registering as voters. These men came from what was formerly built and known as a transient camp, but, for some unknown reason, the wording was changed to Blue Jay Camp.

It appears that the 110 slips were handed to the assessor in one bunch. All of the certificates, as I understand it, were signed by one man as a witness, namely, S. M. Kifer. His residence was not in Howe Township at the time he signed these certificates as a witness, but his residence was in Jenks Township, Forest County. As I understand it, this man Kifer was to be a witness for the 110 men.

It appears from the testimony of Paul Abbott that there was some arrangement made between Mrs. Hoovler and Edward Foster, one complainant, that one of these complainants would appear before her as a test case. There were only four that appeared before her and made any claim that they had a right to vote in Howe Township. Mrs. Hoovler made inquiry of each man that came before her.

The applicant for the present was stopping in what was formerly known as a transient camp, but the name recently changed to Blue Jay Camp. He offered the witness, S. M. Kifer.

The assessor was not acquainted with any one of the four that presented themselves to be registered, nor was she acquainted with S. M. Kifer, who was to be a witness for the different applicants. The assessor had no knowledge who signed 110 certificates handed to her in a bunch, nor was any evidence offered to prove the same.

It appears from the evidence that Mrs. Hoovler made an effort to inform herself more thoroughly relating to her duties.

We now quote that part of section 1 of the Act of January 17, 1934, P. L. 236:

"Section 1. Be it enacted, &c., That for the purpose of making the original annual registration of voters in each of the election districts in which personal registration of voters is not required under the laws of this Commonwealth, it shall be the duty of each of the assessors, who are required to perform any of the duties incident to the holding of elections and the registration of voters in such election districts of this Commonwealth, to visit in person each and every dwelling house in his district on the first Monday in May of each year, or as soon thereafter as may be possible and practicable when all of said dwelling houses cannot be personally visited by him on the said first Monday of May, and to make a list in a book, prepared for that purpose by the county commissioners, of all the qualified electors that he shall find, upon careful and diligent inquiry, to be bona fide residents of his district, together with the date when such dwelling house was visited by the assessor, entering them in such book in the order in which such dwelling houses are visited; and the qualified electors in each dwelling house being grouped together, and if in a city or town, the names of the qualified electors shall be grouped together by streets, alleys or courts, and the persons so found to be legally qualified

electors shall forthwith be registered; the assessor shall, in all cases, personally ascertain, by careful and diligent inquiry of the voter or of some known resident of the election district in which the voter claims the right to vote, upon what ground each person so registered claims to be a legally qualified voter."

The first section of the act states "dwelling house" or "dwelling houses" five different times.

While it is not included in the evidence, it is common knowledge that there are numerous camps called hunting camps, fishing camps, CCC Camps, formerly transient camps, with simply a change in name of recent date. The act does not provide that one of the duties of the assessor on the first Monday of May, or shortly thereafter, shall be to visit anything excepting dwelling houses in her district. I think that one of the witnesses testified that there were 110 that came to see the assessor on September 2, 1936, and they came from some camp. Not a single one of them testified that he came from a dwelling house situate in Howe Township.

The presumption is that the assessor did her duty in early May, along the line provided by the act of assembly, and there was no evidence offered to contradict such presumption.

Under section 3 of the act, the assessor is to make a return to the county commissioners:

"After the registration has been completed, on the sixty-second day before the Tuesday next following the first Monday of November in each year," etc.

A portion of section 2 of said act reads:

"It shall be the duty of the said assessor to be present at the election house of the said election district, during the day next preceding the day fixed by the third section of this act for returning the lists to the county commissioners . . . for the purpose of hearing and acting upon applications to be made under the provisions of this section . . . it shall be his duty to correct said original list

by adding thereto, upon personal application, the names of persons entitled to vote not already thereon," etc.

The evidence in this case clearly shows that the assessor was at the election house in Howe Township as provided by this act, on September 2, 1936.

The act also provides, as above stated, that ". . . the assessor shall, in all cases, personally ascertain by careful and diligent inquiry of the voter or of some known resident of the election district in which the voter claims the right to vote, upon what ground each person so registered claims to be a legally qualified voter."

Now this act in a number of places uses the word "register", and then in parentheses uses the word "assess". There is not one word in the evidence to show that any one of these applicants has been assessed.

Edward C. Foster, one of the complainants, was called and stated that he had resided in Oakmont for 35 or 40 years. He stated that his place of residence was Blue Jay Camp, and stated that he has a wife:

"The slips that we had brought with us were presented to Mrs. Hoovler, and she carefully counted them to see how many there were. My slip was on top. She said she would take this man as an example. She asked me my name, my residence, and previous residence, and if I had a family. Mrs. Hoovler then asked me to present someone who would testify as to my residence in Howe Township. I named Mr. Horsefield and Mr. Graft. Mr. Horsefield was a foreman at the Blue Jay Camp, and I do not know what Mr. Graft's work was."

Later it was shown that J. M. Horsefield's residence was in Berwick. No one seemed to be able to locate from what place Mr. Graft came.

Mr. Abbott was called and stated that all the slips were handed to Mrs. Hoovler at one time. The witness testified that Mrs. Hoovler said:

"I will question one man as a test case". So she called the name of Edward Foster. She may not have said "test case", but "try one man for example".

Mr. Abbott's "Certificate of Enrollment" is marked by the stenographer "Exhibit C".

Mrs. Hoovler asked certain questions.

In court the following question was asked Mr. Foster by attorney:

"Q. State whether or not the paper was presented, that is, 'Exhibit C'.

"A. I could not state."

The witness testified that prior to September 2, 1936, he came from the State of Washington, that he had worked for the WPA in Erie. This man had not only been in Washington, but also Salt Lake City, Utah, and numerous other places.

Raymond L. Gardner was called. This man did not come into the building at all, and the record fails to show that he had any conversation with the assessor.

S. M. Kifer, the witness, lives in Marienville, in what is known as the Jenks District.

James Decker came from the Warren transient camp. Prior to that time he was in Erie, unemployed. Mrs. Hoovler asked Decker if he had anyone that knew of his residence. His answer was:

"From the election district, I don't know, but I think Mr. Burns knows, also Mr. Horsefield."

The assessor could not take one man and make a test case, or an example, in order to register 110 applicants.

The witness testified he was not personally acquainted with Burns, and that Burns had no personal knowledge of his affairs. This is the testimony of James Decker, whose "Certificate of Enrollment" the stenographer has marked "Exhibit A".

Now if there were 110 men hauled in trucks that came before the assessor to register as voters, and four of them presented themselves to the assessor but under the evidence failed to qualify as voters, then the assessor did her duty when she declined to register the four that attempted to qualify. So far as the other 106 are concerned, they made no attempt to qualify. The four men that attempted

to qualify came from what is known as the Blue Jay Camp.

In the first place, it was not her duty to search out such camps. As formerly stated, the act repeatedly uses the word "dwelling house" or "dwelling houses".

There is no question but that an applicant for registration is not entitled to be registered unless he makes a personal application, and then he should satisfy the register that he is entitled to vote. And further, the law provides that the assessor should make diligent inquiry of the voter or of some known resident in the election district in which the voter claims the right to vote.

The evidence clearly shows that Mrs. Hoovler, the assessor, had no acquaintance with any of these men and had no knowledge of the kind or character of the camp from which they came. It was known in Forest County as a "transient camp", and there is nothing to show that Mrs. Hoovler was informed that it was a forestry camp, or a work camp. It was simply presented to her as the "Blue Jay Camp." Nor is there a scintilla of evidence that there was any known resident of the election district qualified to inform the assessor that any of these applicants was legally qualified as a voter of this district.

Forest County is not only small in area, but as I remember, the population is between five and six thousand inhabitants.

Now take these 110 that have drifted into this county; if they should send for their families and become destitute, then it falls upon the taxpayers of Forest County to support them as a county must support its poor, its insane and its criminals. If I recall the argument, the word asylum was used. Now one of our best definitions for an asylum is, "an institution for the care or relief of the aged, destitute or afflicted." As this was formerly called a transient camp, it would appear that many of these applicants were destitute or afflicted, and this simply became an asylum for them. Churches have asylums for the aged, lodge organizations have asylums for the aged and desti-

tute, and when we use simply the word "asylum" it does not mean "insane asylum." I think it is fairly covered by the foregoing definition.

The assessor would be negligent if she added to the list the names of applicants personally unknown to her without demanding proof of the applicants' bona fide residence in the election district. The usual proof of such residence is the testimony of a known resident in the district. No such proof was offered in these cases. If such proof were offered it would have to be something further than proof that the applicant was an inmate of an asylum for transients, maintained at public expense, or that he was an employe of the State or Federal Government in such transient camps. Neither status would make him a resident of the district.

In the instant case, the assessor was fully justified in making diligent inquiry as to the citizenship, residence in Pennsylvania, and residence in the election district of the applicant and, in the absence of satisfactory proof of these qualifications, rejection of his application was imperative.

We quote the following from article VIII, sec. 13, of the Constitution:

"For the purpose of voting no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States, nor while engaged in the navigation of the waters of the State or of the United States, or on the high seas, nor while a student of any institution of learning, nor while kept in any poorhouse or other asylum at public expense, nor while confined in public prison."

There is no dispute and no contradiction of the fact that Mrs. Louella Hoovler, the assessor, was present at the election house in Howe Township on September 2, 1936. It is the duty of the court simply to pass upon the six petitioners who signed and made affidavit to this petition. The names are as follows: Alexander Mordaunt,

James Decker, Raymond L. Gardner, Edward C. Foster, Lawrence Moclair, Paul Abbott. So far as Alexander Mordaunt and Lawrence Moclair are concerned, if we are informed correctly, they were included in the truckload of men that came from what is known as Blue Jay Camp, but those two did not appear in court. The first paragraph of the petition alleges that they are severally qualified electors of the Lynch Voting Precinct of Howe Township. The evidence offered by petitioners showed that not only the other four petitioners, but these last two named petitioners, Mordaunt and Moclair, and a large number of others, came in trucks at the same time in order to be registered as voters.

We have studied the petition and answer, carefully read the evidence, and fail to find wherein the assessor neglected to perform her duties as provided by the act of assembly, and we find that these petitioners, with others, came to what is now called the Blue Jay Camp, formerly a transient camp. It seems simply a change in name. The evidence fails to show that the assessor was acquainted with any one of these petitioners, or any of their witnesses. First, it was the duty of the register to inquire of the applicant relating to his qualifications, and if she was not satisfactorily informed, then it was her duty to inform herself by careful and diligent inquiry of some other resident of the election district in which the voter claimed the right to vote. Not only did the applicant fail to show he was a qualified elector, but he also failed to show that fact by some known resident of the election district. It was the testimony of petitioners that showed that there were 110 certificates bunched together and handed to the assessor, and we are writing this opinion along the lines of the evidence presented by petitioners and the law relating to the duties of the assessor. There was no evidence presented by Mrs. Louella Hoovler, the assessor. Simply being offered 110 certificates signed by somebody with whom the assessor was not acquainted, nor acquainted with the witness, Kifer, what knowledge

would the assessor have of when, where or by whom these certificates were signed? We fail to find any sufficient evidence to order the assessor to correct the registry list made by her. Therefore, we grant the prayer in the answer filed by Mrs. Louella Hoovler, the assessor, to discharge the rule dated October 9, 1936.

Rule discharged, costs to be paid by petitioners.

From Joseph H. Goldstein, Warren.